UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

FILED by _VT_ D.C.
ELECTRONIC

**May 7, 2010**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

LYNN WOLFE, as Personal
Representative of the ESTATE OF
DANIEL WOLFE, on behalf of the
Estate, and on behalf of Daniel Wolfe's
Survivor, LYNN WOLFE,

      Plaintiff,

CASE NO.:

## 10-CV-60736-Martinez-Brown

Vs.

FLORIDA DEPARTMENT OF
CORRECTIONS,

      Defendant.

_____/

## NOTICE OF FILING STATE COURT PLEADINGS

    COMES NOW Defendant, FLORIDA DEPARTMENT OF CORRECTIONS, by

and through their undersigned attorney hereby gives notice of filing the following in

connection with removal from State Court:

    1.    All pleadings, papers, orders, etc. from Broward County Case No.: 10-

09961 (11).

                **MANDELBAUM, FITZSIMMONS & HEWITT, P.A.**

                **SAMUEL R. MANDELBAUM**
                **FLORIDA BAR NO.: 270806**
                **SRM@MANFITZLAW.COM**
                **SCOTT K. HEWITT, ESQ.**
                **FLORIDA BAR NO.: 164836**
                **SKH@MANFITZLAW.COM**
                Post Office Box 3373
                Tampa, Florida  33601
                Telephone:  (813) 221-0200
                *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided via U.S. Mail, postage pre-paid, to Randall C. Berg, Jr., Esq., Joshua A. Glickman, Esq. and Shawn A. Heller, Esq., Florida Justice Institute, Inc., 100 S.E. 2nd Street, 3750 Miami Tower, Miami, Florida 33131-2309 this __6__ day of May, 2010.

**MANDELBAUM & FITZSIMMONS & HEWITT, P.A.**

_____

**SAMUEL R. MANDELBAUM**
**FLORIDA BAR NO.: 270806**
**SRM@MANFITZLAW.COM**
**SCOTT K. HEWITT, ESQ. #164836**
**SKH@MANFITZLAW.COM**
Post Office Box 3373
Tampa, Florida 33601
Telephone: (813) 221-0200
Facsimile: (813) 221-8558
Attorneys for Defendant(s)

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

**GENERAL JURISDICTION**

LYNN WOLFE, as Personal )
Representative of the ESTATE OF )
DANIEL WOLFE, on behalf of the )
Estate, and on behalf of Daniel )
Wolfe's Survivor, Lynn Wolfe, )
                     )
      Plaintiff, )
                     )
vs.                   )     Case No.: 10-09961
                     )
FLORIDA DEPARTMENT OF )
CORRECTIONS, )
                     )
      Defendant. )
_____)

### FIRST AMENDED COMPLAINT

Plaintiff, Lynn Wolfe, as Personal Representative of the Estate of Daniel Wolfe, on

behalf of the Estate of Daniel Wolfe, and on behalf of Daniel Wolfe's survivor, Lynn Wolfe,

sues the defendant, Florida Department of Corrections, and as good grounds alleges as follows:

### Preliminary Statement

1.     This case is about the tragic, untimely, and senseless death of Daniel Wolfe, a

young man in his early twenties, who had only six and a half months left on his sentence when

his life was taken from him at the hands of the Florida Department of Corrections (hereinafter

"FDOC"). Daniel was an artist and a musician, who suffered from severe chronic asthma for the

entirety of his short life.

- 1 -

{07021898;4}

2.     Daniel had several severe asthma attacks while under the supervision and control of the FDOC, each of which was exacerbated by the fact that Daniel was placed in a dorm far from the guard station, and without any emergency method of contacting guards or other staff. For instance, during one of Daniel's attacks, he was left unattended to for more than thirty (30) minutes, while struggling and suffering, as his life was dissipating with every lost breath. Ultimately, Daniel went blue in the face, had no pulse and was announced clinically dead, before being resuscitated.

3.     What makes Daniel's story particularly tragic is that his death could have easily been avoided had he been provided a reasonable accommodation and it was the FDOC's duty to ensure that it was. Eventually, the inevitable happened.   In August of 2006, during another severe asthma attack, Daniel took his last breath, while suffering a horrific death, gasping for air, as FDOC staff and emergency equipment were nowhere to be found. Daniel's death should not go unnoticed, and his mother should be afforded the peace of mind that can only be obtained through the justice system.

### Jurisdiction and Venue

4.     This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs and attorneys' fees, and declaratory relief.

5.     This Court has jurisdiction over the federal law claims raised, pursuant to Article V, section 5(b) of the Florida Constitution.

6.     Plaintiff has complied with all applicable pre-suit screening provisions of Section 768.28, Florida Statutes.

- 2 -

{07021898:4}

7.     Venue is proper in this Circuit as defendant Florida Department of Corrections conducts business in Broward County, Florida, the Plaintiff resides in Broward County, Florida, and the Estate of Daniel Wolfe was opened in Broward County, Florida.

## Parties

8.     Plaintiff, Lynn Wolfe, is the duly appointed Personal Representative of the Estate of Daniel Wolfe, having been appointed Personal Representative by the Probate Division of the Circuit Court in and for Broward County, Florida, File No. 08-006262. This action is brought by Lynn Wolfe, mother of Daniel Wolfe, in her capacity as Personal Representative of the Estate of Daniel Wolfe, on behalf of the Estate of Daniel Wolfe, and on behalf of his survivor, Lynn Wolfe.

9.     At all times material to this action, Daniel Wolfe (hereinafter "Daniel"), was an inmate confined in Lake Correctional Institution in Clermont, Florida, a correctional facility owned and operated by defendant Florida Department of Corrections. Daniel Wolfe was born on September, 27, 1981, in Fort Lauderdale, Florida.

10.     Defendant, Florida Department of Corrections, is an Agency of the state of Florida, subject to suit for negligence pursuant to Section 768.28 of the Florida Statutes; and as a public entity, is subject to suit for damages pursuant to Title II of the Americans with Disabilities Act. Plaintiff has fully and timely complied with the notice requirements of Section 768.28 of the Florida Statutes.

- 3 -

{07021898.4}

## Statement of Facts

11.     Daniel was a very talented young man, known for his skills as both an artist and a musician. Daniel was set to be released from the defendant Florida Department of Corrections in January of 2007, and planned on engaging in a productive life at the age of 25, with the support and love of his mother.

12.     Despite his talents, Daniel suffered with chronic asthma and shortness of breath for most of his life, having been diagnosed with the debilitating disease at age five.

13.     Throughout his life, Daniel had many serious asthma attacks and had to be rushed to the hospital on several occasions to avoid catastrophic results.

14.     On November 1, 2004, Daniel was received at Lake Correctional Institution (hereinafter "Lake C.I."). Daniel's medical records indicated, among other things, that he was diagnosed with asthma at age five and had been hospitalized for severe asthma attacks on numerous occasions.

15.     Prior to Daniel's incarceration at Lake C.I., Daniel had been housed at Lancaster Correctional Institution and Taylor Correctional Institution, where he suffered at least four documented emergencies due to severe asthma attacks.

16.     After his arrival at Lake C.I., Daniel continued to suffer from severe asthma attacks and shortness of breath.   In fact, on more than eight occasions, Daniel suffered emergencies as a result of his asthma, several of which were categorized as "severe" by defendant FDOC's own personnel. Defendant FDOC was well aware that Daniel had asthma and was subject to having severe asthma attacks.

- 4 -

{070218998,4}

17.     Upon arrival at Lake C.I., Daniel was placed into E-Dorm, which is locked behind three doors, including a metal door, from 11:00 p.m. until 6:00 a.m.  In E-Dorm, there is no continuous supervision, and no means for the inmates to communicate with the guards in case of emergencies.

18.     While Daniel was housed in E-Dorm, and at all times relevant, the guards were located in a glassed-in guard station on the other side of the metal doors far from the cells and out of hearing distance from the inmates.  At all times relevant, the guards typically did security rounds every hour and fifteen minutes to every hour and thirty minutes.

### *Daniel Flat-Lines and Survives*

19.     On November 26, 2004, while in E-Dorm, Daniel suffered a severe asthma attack, which resulted in Daniel's vital signs flat-lining, after the Defendant failed to make a reasonable accommodation for Daniel's disability and promptly attend to Daniel's disability-related needs.

20.     At approximately 1:00 a.m. on November 26, 2004, Daniel began experiencing symptoms of respiratory distress.  Daniel took his rescue inhaler, but his symptoms persisted.  Daniel's roommate began calling for help, but nobody responded.  Daniel's symptoms quickly worsened.

21.     In an attempt to get the guards' attention, Daniel's roommate tried to wake up the other inmates in the dorm by yelling, and kicking and banging on the door and walls of their cell.  The other inmates in the dorm noted the emergency and used every means at their disposal to try to get Daniel the attention he urgently needed, including, but not limited to, banging, yelling, stamping, and flicking lighters.

- 5 -

{07021898;4}

22.     After more than ten (10) minutes had passed, a guard arrived at Daniel's cell. Daniel tried to gesture with hand signals to indicate that he could not breathe, while Daniel's roommate reminded the guard of Daniel's severe asthma and told him that Daniel was in the midst of a severe asthma attack. Despite Daniel's worsening condition, the guard dismissed the severity of the emergency by asking Daniel, "if you can't breathe then why are you standing?" Unable to breathe, Daniel then lost consciousness.

23.     The guards continued to ignore the emergency, as Daniel lay helpless on the floor. Eventually, the guards put out a call for a nurse. Nurse Rose Hagan, who was in a different dorm attending a conference, was told by a guard that there was an inmate claiming an emergency in E-Dorm, but that she could take her time getting there because it was "no big deal." Daniel was unconscious at this time.

24.     Nurse Hagan arrived at Daniel's cell in E-Dorm thirty (30) minutes after Daniel and his roommate began calling for help, and twenty (20) minutes after Daniel lost consciousness. According to FDOC medical records, Nurse Hagan found Daniel blue in the face with dark blue fingernail beds, unconscious, lying on the floor. Nurse Hagan noted on the Respiratory Assessment form that when she reached Daniel, he had no vital signs -- "nonexistent."

25.     When Nurse Hagan arrived at Daniel's cell, she immediately asked the guards to open his cell so that she could begin to administer care. The guards, however, ignored her request. Nurse Hagan then yelled for the guards to "open this fucking door and call 911." The guards then complied. She then told the guards to take Daniel out of the cell, and, again, they

- 6 -

{07021898:4}

intentionally refused. Daniel's roommate then dragged Daniel out of his cell so that Nurse Hagan could have adequate space to examine him.

26.    Despite Nurse Hagan's best efforts, Daniel was not responding. After lying unattended and unconscious for nearly thirty (30) minutes, Daniel had no pulse and was not breathing. Nurse Hagan began to perform CPR, and soon the paramedics arrived. Eventually, due to the combined efforts of Nurse Hagan and the paramedics, Daniel was revived after being announced clinically dead. Daniel was then sent to the Emergency Room and ultimately survived.

### *Defendant Deliberately Fails to Make a Reasonable Accommodation for Daniel's Serious Disability-Related Needs and Places Him Back in E-Dorm*

27.    Following Daniel's near-death experience, Daniel's mother, Lynn Wolfe, repeatedly contacted correctional personnel at Lake C.I. to request that Daniel be transferred to a dorm or a facility, other than E-Dorm at Lake C.I., where Daniel could be more closely supervised for his serious asthma condition and where guards would be able to promptly respond to Daniel's cries for help in case of another emergency.

28.    In addition to Lynn Wolfe's repeated requests to correctional personnel at Lake C.I. that Daniel be re-classified given his disability, Daniel also requested that guards transfer him to another dorm or facility where he could be more closely supervised or where guards would be able to promptly respond in case of another severe asthma attack.

- 7 -

{07021898.4}

29.    Despite Daniel and his mother's repeated requests for a transfer or for some other reasonable accommodation for his serious disability, Defendant instead placed Daniel back in E-Dorm, where the guards and staff were too far away to hear his pleas for help.

30.    At the time Daniel was placed back in E-Dorm, Defendant was fully aware of the November 2004, incident, and was further fully aware of the fact that Daniel's cell in E-Dorm was too far away from the guard station or any personnel for either to provide Daniel with the assistance he would desperately require in the case of another inevitable asthma-related emergency.

31.    After Defendant placed Daniel back into E-Dorm, Daniel suffered several more serious asthma attacks, including attacks on June 5, 2005, September 4, 2005, November 27, 2005, December 16, 2005, January 12, 2006, and January 17, 2006—all of which, Defendant was aware of.  During Daniel's asthma attack on September 4, 2005, Daniel again briefly lost consciousness, and the Respiratory Assessment form again indicated that Daniel's face was ashen, and that his nails were pale and lips were tinged blue.  Daniel's need for a reasonable accommodation from defendant FDOC could not have been more obvious.

32.    Following each severe asthma attack, both Daniel and his mother plead with correctional personnel at Lake C.I. for Daniel to be transferred to a dorm or facility that could reasonably accommodate his serious asthma condition and allow guards and/or staff to quickly respond to Daniel's cries for help in the event of a severe asthma attack.  Even after Defendant was put on notice countless times that Daniel was being denied access to the reasonable accommodation that he so desperately required, Defendant continued to ignore Daniel and his

- 8 -

{07021898:4}

mother's pleas for a transfer or some other form of reasonable accommodation for his serious disability.

33.     Defendant knew or should have known that it was only a matter of time before its negligence and intentional refusal to provide a reasonable accommodation for Daniel's serious disability would eventually result in a fatal asthma attack.

### Daniel's Second Attack: Daniel Loses his Breath Forever

34.     On August 3, 2006, Daniel took his last breath, as his young life was taken from him as a result of Defendant's negligence and intentional refusal to provide a reasonable accommodation for his serious disability-related needs.

35.     Despite his history of severe asthma attacks requiring a quick response from guards and/or personnel, Daniel was still housed in E-Dorm, far from the guard station, and without any emergency method of contacting guards or other staff.  As could easily have been predicted, Daniel suffered yet another severe asthma attack.

36.     Daniel, in the midst of the asthma attack, woke up his roommate, David Kitt.  In an attempt to get the guards' attention, David called for help, banged on the locked cell door, and instructed the other inmates in E-Dorm to do the same.  Inmates throughout E-Dorm caused as much noise as they could to get the guards' attention, including banging and yelling on their cell doors and walls, stamping on the ground, and even lighting toilet paper on fire and throwing it into the hallways in an attempt to save their friend's life.

37.     Despite the inmates' desperate pleas for help, it again took a guard nearly fifteen (15) to twenty (20) minutes to respond to Daniel's cell.  When a guard finally did arrive at the

-9-

scene, he called for assistance. After at least two calls for assistance had been made, a nurse finally arrived—more than ten (10) minutes after the guard's first call for assistance, and nearly thirty (30) minutes after David Kitt's initial report of an emergency.

38.     By the time the nurse arrived on the scene, Daniel appeared to have no pulse, his fingernail beds were blue, and his facial coloring was also blue.

39.     Daniel was pronounced dead by Emergency Medical Services at 4:02 a.m., due to respiratory failure.

40.     On August 3, 2006, Daniel Wolfe, a young man in his early twenties, who had only six and a half months remaining on his actual sentence, suffered a death sentence at the hands of the Florida Department of Corrections.

## Count One
## Wrongful Death

41.     Plaintiff repeats and realleges paragraphs one (1) through forty (40) as if fully set forth herein.

42.     This Count One is against defendant, Florida Department of Corrections, for negligence, which resulted in the death of Daniel Wolfe in violation of Florida's Wrongful Death Act, Sections 768.16-768.27, Florida Statutes.

43.     Defendant Florida Department of Corrections acknowledged that its agents and employees were authorized to act for defendant Florida Department of Corrections when they committed the negligent acts alleged herein. Defendant Florida Department of Corrections' agents and employees accepted the undertaking of acting on behalf of defendant Florida

- 10 -

Department of Corrections when they committed the negligent acts alleged herein. Defendant Florida Department of Corrections had control over its agents and employees when they committed the negligent acts alleged herein.

44. The negligent acts of defendant Florida Department of Corrections' agents and employees, were done while acting within the course and scope of their employ and/or agency with defendant Florida Department of Corrections. Thus, defendant Florida Department of Corrections is vicariously liable for the actions of its agents and employees when they committed the negligent acts alleged herein.

45. Defendant Florida Department of Corrections owed Daniel a nondelegable duty to use reasonable care to ensure that Daniel was properly housed for his safety and well-being.

46. Defendant Florida Department of Corrections failed to perform its duty to use reasonable care to ensure that Daniel was properly housed for his safety and well-being, thereby abandoning Daniel.

47. Defendant Florida Department of Corrections failed to perform its duty to use reasonable care to ensure that Daniel was properly housed for his safety and well-being by, among other things:

        A.      failing to properly house Daniel in light of his disability;

        B.      failing to investigate the type of housing Daniel required in order to accommodate his disability;

        C.      failing to consider Daniel's particular disability when making his housing assignment; and

- 11 -

E. failing to reasonably accommodate Daniel's serious disability.

48. As a direct and proximate result of defendant Florida Department of Corrections', its employees', and agents' failure to perform their duty to use reasonable care to ensure Daniel's safety and well-being, he died.

49. Defendant Florida Department of Corrections, its agents and employees, knew and/or should have known about Daniel's serious disability, and need for a reasonable accommodation.

50. Therefore, it was reasonably foreseeable that harm would befall Daniel either directly or indirectly as a result of the aforementioned actions and omissions of defendant Florida Department of Corrections, its employees, and agents.

WHEREFORE, on this Count One, as a result of the tragic and untimely death of Daniel Wolfe in violation of Florida's Wrongful Death Act, the Survivor of and the Estate of Daniel Wolfe have sustained the following damages, and therefore seek same from defendant Florida Department of Corrections:

A. The Estate of Daniel Wolfe has sustained the following damages:

    1. funeral and burial expenses incurred as a result of the death of Daniel Wolfe that have become a charge against his Estate or that were paid on his behalf;

    2. loss of prospective net Estate accumulations; and

    3. loss of earnings of Daniel Wolfe from the date of his death, less loss support of his Survivor excluding contributions in kind with interest.

- 12 -

B.    Lynn Wolfe, as the mother of Daniel Wolfe, a minor at his time of death, has sustained the following damages:

    1.    loss of support and services of her son;

    2.    mental pain and suffering from the date of injury and continuing for the remainder of her life; and

    3.    medical and funeral expenses due to the death of Daniel Wolfe.

In sum, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages; any and all other compensatory damages suffered by Plaintiff; and such other and further relief as the Court deems just and equitable.

**Count Two**
**Violations of Title II of the Americans with Disabilities Act**
**(Deliberate Indifference – Refusal to Provide a Reasonable Accommodation)**

51.    Plaintiff repeats and realleges paragraphs one (1) through forty (40) as if fully set forth herein.

52.    This Count Two is a claim for disability discrimination against Defendant for violating Title II (public entities) of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (hereinafter the "ADA") which provides in pertinent part at 42 U.S.C. § 12132:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

- 13 -

{07021898;4}

Title II of the Act prohibits, among other things:

- limiting a qualified individual's enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service of an agency; and

- subjecting a qualified individual to discrimination under any program or activity conducted by an agency.

28 C.F.R. § 39.130.

53.    Daniel was disabled as defined at 42 U.S.C. § 12102(2), as he suffered a physical impairment that substantially limited one or more of his major life activities, including, but not limited to, breathing.

54.    Daniel was a "qualified individual" as defined at 42 U.S.C. § 12131(2):

"Qualified Individual" means an individual with a disability who meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the entity (with or without regard to any auxiliary aids or modifications).

55.    Defendant Florida Department of Corrections is a public entity that has violated Title II of the ADA.

56.    Defendant's prison at Lake C.I. is a facility, and its operation comprises a program and service for purposes of Title II of the ADA.

57.    Defendant Florida Department of Corrections acknowledged that its agents and employees were authorized to act for defendant Florida Department of Corrections when they committed the ADA violations alleged herein. Defendant Florida Department of Corrections' agents and employees accepted the undertaking of acting on behalf of defendant Florida Department of Corrections when they committed the ADA violations alleged herein. Defendant

- 14 -

Florida Department of Corrections had control over its agents and employees when they committed the ADA violations alleged herein.

58.  The ADA violations alleged herein and committed by defendant Florida Department of Corrections' agents and employees, were done while acting within the course and scope of their employ and/or agency with defendant Florida Department of Corrections. Thus, defendant Florida Department of Corrections is vicariously liable for the actions of its agents and employees when they committed the ADA violations alleged herein.

59.  Daniel and his mother, Lynn Wolfe, alerted defendant Florida Department of Corrections, its employees and agents, of his need for a reasonable accommodation; and/or Daniel's need for a reasonable accommodation was obvious.

60.  Defendant Florida Department of Corrections, its employees, and agents knew and/or should have known of Daniel's need for a reasonable accommodation.

61.  Defendant Florida Department of Corrections, its agents and employees, acted intentionally and/or with deliberate indifference to Daniel's need for a reasonable accommodation by, among other things:

        A.  failing and intentionally refusing to place Daniel in housing where he could receive urgent care when such care was necessary to reasonably accommodate Daniel's disability;

        B.  failing and intentionally refusing to investigate into what accommodations for Daniel would have been reasonable;

- 15 -

{07021898:4}

C.    failing and intentionally refusing to consider Daniel's particular disability when making his housing assignment; and

D.    failing and intentionally refusing to reasonably accommodate Daniel's serious disability.

62.    As a direct and proximate result of defendant Florida Department of Corrections', its employees', and agents' failure and intentional refusal to provide Daniel with an accommodation for his disability, he died.

WHEREFORE, on this Count Two, as a result of the tragic and untimely death of Daniel Wolfe in violation of the ADA, the Survivor of and the Estate of Daniel Wolfe have sustained the following damages, and therefore seek same from defendant Florida Department of Corrections:

A.    The Estate of Daniel Wolfe has sustained the following damages:

1.    funeral and burial expenses incurred as a result of the death of Daniel Wolfe that have become a charge against his Estate or that were paid on his behalf;

2.    loss of prospective net Estate accumulations; and

3.    loss of earnings of Daniel Wolfe from the date of his death, less loss support of his Survivor excluding contributions in kind with interest.

B.    Lynn Wolfe, as the mother of Daniel Wolfe, a minor at his time of death, has sustained the following damages:

1.    loss of support and services of her son;

- 16 -

2. mental pain and suffering from the date of injury and continuing for the remainder of her life; and

3. medical and funeral expenses due to the death of Daniel Wolfe.

In sum, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages, any and all other compensatory damages suffered by Plaintiff. Plaintiff's attorneys' fees and costs in this action pursuant to 42 U.S.C. § 12205; declare the actions of the defendant Florida Department of Corrections complained herein to be in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and grant such other and further relief as the Court deems just and equitable.

### Count Three
### Violations of Title II of the Americans with Disabilities Act
#### (Deliberate Indifference – Refusal to Train)

63. Plaintiff repeats and realleges paragraphs one (1) through forty (40) as if fully set forth herein.

64. This Count Three is a claim for disability discrimination against Defendant for violating Title II (public entities) of the ADA, 42 U.S.C. § 12101 et seq., which provides in pertinent part at 42 U.S.C. § 12132:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

- 17 -

Title II of the Act prohibits, among other things:

- limiting a qualified individual's enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service of an agency; and

- subjecting a qualified individual to discrimination under any program or activity conducted by an agency.

28 C.F.R. § 39.130.

65.    Daniel was disabled as defined at 42 U.S.C. § 12102(2), as he suffered a physical impairment that substantially limited one or more of his major life activities, including, but not limited to breathing.

66.    Daniel was a "qualified individual" as defined at 42 U.S.C. § 12131(2):

"Qualified Individual" means an individual with a disability who meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the entity (with or without regard to any auxiliary aids or modifications).

67.    Defendant Florida Department of Corrections is a public entity that has violated Title II of the ADA.

68.    Defendant's prison at Lake C.I. is a facility, and its operation comprises a program and service for purposes of Title II of the ADA.

69.    Defendant Florida Department of Corrections acknowledged that its agents and employees were authorized to act for defendant Florida Department of Corrections when they committed the ADA violations alleged herein.  Defendant Florida Department of Corrections' agents and employees accepted the undertaking of acting on behalf of defendant Florida Department of Corrections when they committed the ADA violations alleged herein.  Defendant

- 18 -

{07021898;4}

Florida Department of Corrections had control over its agents and employees when they committed the ADA violations alleged herein.

70.     The ADA violations alleged herein and committed by defendant Florida Department of Corrections' agents and employees, were done while acting within the course and scope of their employ and/or agency with defendant Florida Department of Corrections. Thus, defendant Florida Department of Corrections is vicariously liable for the actions of its agents and employees when they committed the ADA violations alleged herein.

71.     Daniel and his mother, Lynn Wolfe, alerted defendant Florida Department of Corrections, its employees and agents, of his need for accommodation; and/or Daniel's need for an accommodation was obvious.

72.     Defendant Florida Department of Corrections, its employees and agents, knew and/or should have known of Daniel's need for a reasonable accommodation.

73.     Defendant Florida Department of Corrections, its agents and employees, acted intentionally and/or with deliberate indifference to Daniel's need for a reasonable accommodation by, among other things, failing and intentionally refusing to train the employees and/or agents of the Florida Department of Corrections with respect to Daniel's disability. Such failure and intentional refusal to train led to, among other things:

> A.     Daniel being placed in housing where he could not receive urgent care when such care was necessary to accommodate Daniel's disability;
>
> B.     Daniel's urgent disability-related needs going unmet when such needs arose;

- 19 -

C.   Florida Department of Corrections employees and agents failing and intentionally refusing to investigate into what accommodations for Daniel's serious disability would have been reasonable;

D.   Florida Department of Corrections employees and/or agents failing and intentionally refusing to consider Daniel's particular disability-related needs; and

E.   Florida Department of Corrections employees and/or agents failing and intentionally refusing to reasonably accommodate Daniel's serious disability.

74.   As a direct and proximate result of defendant Florida Department of Corrections', its employees', and agents' failure and intentional refusal to train its employees and agents in such a way as to provide Daniel with a reasonable accommodation for his disability, he died.

WHEREFORE. on this Count Three, as a result of the tragic and untimely death of Daniel Wolfe in violation of the ADA. the Survivor of and the Estate of Daniel Wolfe have sustained the following damages, and therefore seek same from defendant Florida Department of Corrections:

A.   The Estate of Daniel Wolfe has sustained the following damages:

1.   funeral and burial expenses incurred as a result of the death of Daniel Wolfe that have become a charge against his Estate or that were paid on his behalf;

2.   loss of prospective net Estate accumulations; and

- 20 -

3.   loss of earnings of Daniel Wolfe from the date of his death, less loss

support of his Survivor excluding contributions in kind with interest.

B.   Lynn Wolfe, as the mother of Daniel Wolfe, a minor at his time of death, has

sustained the following damages:

1.   loss of support and services of her son;

2.   mental pain and suffering from the date of injury and continuing for the

remainder of her life; and

3.   medical and funeral expenses due to the death of Daniel Wolfe.

In sum, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned

damages, any and all other compensatory damages suffered by Plaintiff, Plaintiff's attorneys'

fees and costs in this action pursuant to 42 U.S.C. § 12205; declare the actions of the defendant

Florida Department of Corrections complained herein to be in violation of Title II of the

Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and grant such other and further

relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands trial by jury on all issues that can be heard by a jury.

Respectfully submitted,

Randall C. Berg, Jr., Esq.
Fla. Bar No. 318371
Joshua A. Glickman, Esq.
Fla. Bar No. 43994
Shawn A. Heller, Esq.
Fla. Bar No. 46346

- 21 -

{07021898.4}

Florida Justice Institute, Inc.
100 S.E. 2nd Street
3750 Miami Tower
Miami, Florida 33131-2309
305-358-2081
Fax 305-358-0910
sheller@floridajusticeinstitute.org

By: _____

Shawn A. Heller, Esq.
Attorneys for the Plaintiff

- 22 -

{07021898:4}