UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LYNN WOLFE, as Personal Representative
of the ESTATE OF DANIEL WOLFE, on
behalf of the Estate, and on behalf of
Daniel Wolfe's Survivor, LYNN WOLFE,

                Plaintiff,

vs.

FLORIDA DEPARTMENT OF
CORRECTIONS,
                Defendant.
_____/

CASE NO.: 5:10-CV-663-Oc-10DAB

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S PETITION FOR WRITS OF HABEAS CORPUS AD TESTIFICANDUM AS TO JASON CUNNIGHAM AND GILLARD SMITH

Defendant, FLORIDA DEPARTMENT OF CORRECTIONS, by and through undersigned counsel, pursuant to this Honorable Court's Order dated September 4, 2012 [D.E. 86], responds in opposition to Plaintiff's Writ of Habeas Corpus Ad Testificandum, and in support thereof states the following:

1.     This matter stems from an incident that occurred on August 3, 2006, during which it is alleged that Daniel Wolfe suffered from a fatal asthma attack while incarcerated in Wing 1 of Echo Dorm ("E-Dorm") at Lake Correctional Institute; the details of which have been explained in greater detail in Defendant's Motion for Partial Summary Judgment [D.E. 52], and Plaintiff's Response to same [D.E. 74].

2.     Plaintiff seeks to compel the attendance of eight (8) prisoner-witnesses at the upcoming trial, which is scheduled to commence on November 5, 2012. [D.E. 85]. All of the prisoners are currently housed in different facilities located throughout the state, and would have

1

to be transported to the Ocala area, housed there for approximately seven days, and then transported back to their regular institutions – presumably all at the Department's cost.[1]

3. Given that the critical facts disputed in this matter stem from the 2006 incident, and in the interest of ensuring fundamental fairness, the Defendant has not opposed the Plaintiff's request to present the live testimony of six prisoners Ruben Berrios, Enrique Cotto, David Kitt, Alfredo Rivera, Luis Rivera, and Tommy Thompson (hereinafter "the 2006 Inmate-Witnesses"), that were housed in cells that were relatively close in proximity to Daniel Wolfe's cell on the morning of August 3, 2006, despite the fact that the testimony from the 2006 Inmate-Witnesses may likely be cumulative, duplicative, purley speculative and/or irrelevant to the substantive matters at issue. The 2006 Inmate-Witnesses are anticipated to testify as to: (1) the sequence of events that occurred in the morning hours of August 3, 2012; and (2) to what extent Daniel Wolfe was limited in his day-to-day activites by his asthma.

4. In addition to the 2006 Inmate-Witnesses, the Plaintiff has requested that two prisoners, Jason Cunningham, DC#591562, and Gillard Smith, DC#204589, that resided in Wing 3 of E-Dorm with the Plaintiff on November 26, 2004, be transported to Ocala, Florida for the purposes of testifying live at trial. [D.E. 85]. While the Department was aware that these individuals existed, as they have been in the custody of the Department for several years, neither were identified as having information relevant to the present litigation until their unsworn declarations were submitted as attachments to the Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment as to Counts II and III of the Plaintiff's Complaint.

5. Like the 2006 Inmate-Witnesses, Cunningham and Smith are anticipated to testify as to any the severity of Daniel Wolfe's asthma. Additionally, the Plaintiff intends to illicit

---

[1] The Plaintiff requested in her Petition that the Defendant bear the cost of the implementing the Writ; however, there has been no discussion between the parties regarding same.

2

testimony from Cunningham and Smith concerning Daniel Wolfe's previous November 26, 2004 asthma attack [D.E. 85 at 7].

6. Any testimony from Cunningham and Smith concerning Daniel Wolfe's day-to-day limitations would be cumulative, duplicative, and would not **substantially further** the resolution of this case, as they would be the seventh and eighth inmates, respectively, to testify concerning such matters.

7. As regards Cunningham's and Smith's anticipated testimony concerning the November 26, 2004 asthma attack, such testimony is irrelevant, or, if relevant, the probative value of the testimony is substantially outweighed by the danger of unfair prejudice, confussing the issues, misleading the jury, or the needless presentation of cumulative evidence.

8. The expense and security risks associated with the transportation and safekeeping of Jason Cunningham and Gilliard Smith are significant, burdensome, and wholly unreasonable given that their testimony will provide little, if any, relevant information that will further the resolution of this case.

## MEMORANDUM OF LAW

A writ of habeas corpus ad testificandum is the mechanisim by which a court, at its discretion, may order the in-court production of a prisoner. *See* Spears v. Chandler, 672 F.2d 834, 835 (11th Cir. 1982) (Per curiam). *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977) (citing 28 U.S.C. §(s) 2241(c)(5)) (whether to issue the writ of habeas corpus ad testificandum rests within the sound discretion of the district court.); *see, e.g., Poole v. Lambert*, 819 F.2d 1025 (11th Cir. 1987). "In order to determine whether the prisoner should appear at trial, the district court must consider factors such as whether the prisoner's presence will **substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping....**" *Id.* at. 480 (applied balancing

3

approach when considering whether to allow plaintiff-prisoner to attend trial)(*emphasis added* and internal quotations omitted); 28 U.S.C. § 2241(c)(1982) ("[t]he writ of habeas corpus shall not extend to a prisoner unless- .... (5) It is **necessary** to bring him into court to testify for trial.")(*emphasis added*); . "The *Ballard* court specifically directed, however, that a district court should not base its discretion on the probability that a prisoner will succeed on the merits of his claim, because such a factor focuses on the ultimate result of the action rather than on the need for the prisoner's testimony vis-a-vis the difficulties attendant in securing it." *Poole*, at 1028 (*citing Ballard*, 557 F.2d at 481).

In applying the *Ballard* analysis, the underlying goal is to ensure fundamental fairness to the litigating parties. This issue often arises in situations where a prisoner is the plaintiff in a civil matter, and a trial court is faced with determining whether the need for the party's attendance at trial outweighs the financial burdens and security concerns. *See e.g., Latiolais v. Whitley*, 93 F.3D 205 (5th Cir. 1996). As stated in the *Latiolais* case cited by the Plaintiff in her Petition for Writs of Habeas Corpus ad Testificandum, "[a]t a minimum, fundamental fairness requires that plaintiffs have the opportunity to present their cases so that the trier of fact can make a **meaningful search** for the truth." *Latiolais v. Whitley*, 93 F.3D 205 (5th Cir. 1996) (*citing Sims v. ANR Freight System, Inc.*, 77 F.3d 846, 849 (5th Cir. 1996) ("A trial is a proceeding designed to be a search for the truth.")(*emphasis added*); *but see, Poole*, at 1028 ("lawful incarceration necessarily limits an inmate's right to plead and manage his own case personally[,]" and a prisoner-plaintiff in a civil matter "has no absolute right to be present at the trial of his civil action.").

In support of her Petition to have the two inmates from the previous 2004 incident attend trial, the Plaintiff relies on *Latiolais v. Whitley*, 93 F.3D 205 (5th Cir. 1996), and *Carter v. Hutto*, 781 f.2D 1028 (4TH Cir. 1986) in asserting that the attendence of the prisoner-witnesses is

4

required so to preserve the Plaintiff's right to a fair trial. However, the direct application of those holdings to the present matter is likely inappropriate. In *Latiolais*, the 5th Circuit reviewed the circumstances surrounding the Plaintiffs' trial of §1983 claims. *Latiolais*, 93 F.3d at 207. The plaintiffs, who were not represented by counsel, had requested, and were denied the right to attend the trial. *Id.* The trial court apparently made the decision to deny the plaintiffs' attendance without considering the importance of the plaintiffs presence for the jury to make credibility determinations. *Id.* at 208. The trial itself was conducted entirely on deposition testimony – a decision apparently not challenged by the prisoner-plaintiffs – and the parties stipulated to what evidence would be presented. *Id.* However, the presentation of the deposition testimony during trial was not properly conducted. *Id.* at 210. For example, one of the defendants was permitted to read his deposition to the jury, which "may have given [the defendant] an unfair advantage over the plaintiffs," as all of the other depositions were read by a court reporter. *Id.* at 209. Additionally the defense was permitted to rest its case without first introducing evidence that was critical to the plaintiffs case, and that the parties had stipulated would be entered. *Id.* at 208-209. Due to the Plaintiffs not being present during the trial, they were unable to object to these errors. Id. In reaching its decision, the 5th Circuit determined that "the accumulation of errors committed in the trial ... violated notions of fundamental fairness, necessitating a new trial." *Id.* at 210. However, the 5th Circuit expressly stated that it was not expressing any opinion as to whether the plaintiffs must be present during the new trial, but only that the trial court should reconsider same. *Id.* Accordingly, *Latiolaisi* does not mandate that the inmate witnesses in this matter be authorized, but only that the court properly evaluate whether the need for their attendance outweighs the other concerns.

In the *Carter* case, the 4th Ciruit addressed the entry of judgment for defendants in a *pro se* plaintiff's 1983 claim. *Carter*, 781 F.2d at 1030. The judgment was entered following the

5

court's denial of the plaintiff's writ of habeas corpus ad testificandum to secure the attendance of two inmates identified as eyewitnesses in the complaint. *Id.* at 1030 (writ was denied for failing to comply with the specifics of a pre-trial order). Due to the court's denial of the plaintiff's requests for the production of the witnesses, the plaintiff was unable to present testimony from any individual with first-hand knowledge of the events that transpired. *Id* at 1031. As the plaintiff's claim "could be established only by the testimony of the two missing witnesses[,]" and hinged on the credibility of the eyewitnesses and defendants, the court properly vacated the judgment, and ordered that the case be "tried anew with the witnesses present and available to testify." *Id* at 1032.

Unlike the situation in *Carter*, the attendance of the prisoner-witnesses Cunningham and Smith at the forthcoming trial is not "essential" to the fair adjudication of this matter. The Plaintiff mistakenly characterizes Cunnigham's and Smith's testimonies, which are to be limited to the topics addressed in their respective unsworn declarations, as "vital" evidence concerning the "three areas that cover the most vital aspects of this case." [D.E. 85 at 3].[2] *Id.* However, the Plaintiff is mistaken regarding the need for Cunningham and Smith to testify, and fails to appreciate the significant burdens that would result from an order compelling their brief attendance at trial.

First, it is uncontested that Daniel Wolfe was identified by the Department as an asthmatic inmate prior to his transfer to Lake Correctional Institute. [D.E. 74-13, 74-10, 74-42]. Daniel Wolfe's medical treatment records clearly reflect same. Additionally, the correctional officer, Scott Ackerman, that first responded to Daniel Wolfe's cells during both the 2004 and

---

[2] Both Cunningham and Smith completed unsworn declarations addressing: (1) Daniel Wolfe's "asthma and his breathing problems[;]" (2) the November 26, 2004 asthma attack; and (3) the estimated response time for correctional personnel." [74-28, 74-25]. Additionally, inmate Cunningham's unsworn declaration discussed hearsay statements from conversatiosn with Daniel Wolfe concerning the need for a change to Wolfe's housing assignment. [D.E. 74-28].

6

2006 incidents, has testified during his deposition that he was made aware on November 26, 2004 that Daniel Wolfe suffered from asthma. [D.E. 74-18].

Second, the Plaintiff has retained the services of Jay Falk, M.D., as an expert witness regarding Daniel Wolfe's death, and whether the Department's policies and actions contributed to his death. [D.E. 74-42]. Dr. Falk has issued opinions addressing Daniel Wolfe's placement in E-Dorm prior to the November 26, 2004 incident, as well as the circumstances of the November 26, 2004 incident. *Id.* These opinions were formulated long prior to Plaintiff's counsel's first conversations with Cunningham and Smith.[3] As the Plaintiff will be able to address these allegedly "vital" issues through medical records, expert testimony and other evidence, the benefit of having two prisoners testify live at trial is minimal at best.

Third, Cunningham's and Smith's testimonies concerning the ways in which Daniel Wolfe's asthma limited his major life activities are certainly not "vital." Unlike the plaintiff in Carter, the Plaintiff here is already being afforded the opportunity to present numerous witnesses, likely at heft government expense, to testify as to their first-hand knowledge of what, if any, limitations were caused by the Plaintiff's asthma. Each of the six 2006 Inmate Witnesses had interacted with Daniel Wolfe in the days, weeks, and/or months leading up to his death, while the Cunningham and Smith may not have resided in the same general area as Daniel Wolfe for almost a two-year periof before the final August 2006 incident.

Finally, and possibly most important, the 2004 asthma attack, and circumstances surrounding same, are not a critical, "hotly contested" issue in this litigation. The Defendant has never contested the fact that Daniel Wolfe had an asthma attack on November 26, 2012 that required emergency medical care, intubation, and transportation to the local Emergency Room.

---

[3] Plaintiff stated in their Petition that they had not spoken to either Gillard or Smith until after Defednat had filed its Motion for Summary Judgment as to Claims II and III of the Plaintiff's Complaint. [D.E. 85 at pg. 7]. The Revised Expert Report and Unsworn Declaration of Jay L. Falk was submitted approximately three months prior to the Defendant's filing. [D.E. 74-42].

Further, the Department's employee(s) themselves testified to hearing Daniel Wolfe's fellow inmates yelling, and banging on cell doors in an attempt to get the officers' attention. [D.E. 74-18].

Both parties have already expended enormous resources during discovery deposing the numerous witnesses that were identified as likely to have information relevant to this litigation. The Defendant anticipates incurring exponentially more costs in transporting and safekeeping the 2006 Inmate Witnesses, if forced to bear the costs related to same. While the Plaintiff has a right to a fair trial, the limits of same should be reasonably established, with fair consideration given to the ever increasing financial burden placed on the Defendant.

## CONCLUSION

The Defendant opposes the Plaintiff's Petition for Writ of Habeas Corpus Ad Testificandum for the attendance of inmates Jason Cunningham and Gillard Smith. Regardless of which party bears the cost, the expenses associated with transporting and safekeeping these inmates in relation to trial substantially outweigh the need for their attendance. Even the substitution of Cunningham and Smith for two of the 2006 Inmate Witnesses – as mentioned by the Plaintiff in their Petition - would unreasonably cause both parties to incur additional costs (possible depositions, travel, investigation, etc.). Accordingly, this Honorable Court is well within its right to deny the Plaintiff's Petition regarding these two additional witnesses, as the Plaintiff is already ensured the opportunity to present their cases so that the trier of fact can make **a meaningful search** for the truth.

WHEREFORE, the Defendant requests that this Honorable Court deny the Plaintiff's Writ of Habeas Corpus Ad Testificandum concerning the attendance of Jason Cunningham and Gillard Smith.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Semptember 7, 2012, I electronically filed the foregoing document through the US District Court CM-ECF filing system which will electronically send copies to Shawn A. Heller, Esq., Florida Justice Institute, Inc., 100 S.E. 2nd Street, 3750 Miami Tower, Miami, Florida 33131-2309.

        MANDELBAUM, FITZSIMMONS & HEWITT, P.A.

        /s/ Samuel R. Mandelbaum

**SAMUEL R. MANDELBAUM, ESQ. #270806**
**SRM@MANFITZLAW.COM**
**SCOTT K. HEWITT, ESQ. #164836**
**SKH@MANFITZLAW.COM**
**STEPHEN A. SPAID, ESQ. #0085432**
**SAS@MANFITZLAW.COM**
Post Office Box 3373
Tampa, Florida 33601
Telephone: (813) 221-0200
Facsimile: (813) 221-8558