UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**LYNN WOLFE, as Personal Representative of the Estate of Daniel Wolfe, on behalf of the Estate, and on behalf of Daniel Wolfes Survivor, Lynn Wolfe**

    **Plaintiff,**

v.                                                                                                       Case No:5:10-CV-663-Oc-PRL

**FLORIDA DEPARTMENT OF CORRECTIONS**

    **Defendant.**
_____/

**ORDER**

Pending before the Court is Defendant's Motion for Summary Judgment as to Counts II and III of Plaintiff's First Amended Complaint (Doc. 52) with supporting exhibits (Docs. 51, 54 & 59), to which Plaintiff filed a response in opposition with supporting exhibits. (Doc. 74).  The motion is fully briefed and ripe for review.  For the reasons discussed below, Defendant's Dispositive Motion (Doc. 29) is **DENIED**.

**I.  BACKGROUND**

This action arises out of Daniel Wolfe's ("Wolfe") death on August 3, 2006, from an asthma attack while incarcerated at Lake Correctional Institution ("Lake C.I.") in Clermont, Florida, a correctional facility owned and operated by Defendant, Florida Department of Corrections ("the FDOC").

Wolfe's mother, Lynn Wolfe ("Plaintiff"), brought this action as the personal representative for the Estate of Daniel Wolfe, on behalf of the estate and on behalf of herself as Wolfe's survivor claiming violations of Florida's Wrongful Death Act and the

American's with Disabilities Act, 42 U.S.C. §12101 et seq. ("ADA"). At issue here are Plaintiff's claims under the ADA—(a) Count Two: Violations of Title II of the Americans with Disabilities Act (Deliberate Indifference – Refusal to Provide a Reasonable Accommodation); and (b) Count Three: Violations of Title II of the American with Disabilities Act (Deliberate Indifference – Refusal to Train). Plaintiff seeks damages in both counts. Central to these claims is her position that the FDOC violated the ADA by failing to provide Wolfe with reasonable accommodations for his asthma – i.e., the means to promptly communicate with prison officials if he was having a life-threatening asthma attack, such as a different housing assignment or an emergency call button.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party. See Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions,

answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

**III. DISCUSSION**

Title II of the ADA prohibits public entities from denying qualified individuals with disabilities the opportunity to participate in the services, programs, or activities of the public entity because of their disabilities, and prohibits discrimination against disabled individuals by a public entity. 42 U.S.C. §12132. [1]  The Supreme Court has held that Title II applies to state prisoners. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998).

To establish a prima facie case of discrimination under Title II, Plaintiff must demonstrate that (1) Wolfe is a qualified individual with a disability; (2) Wolfe was denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is by reason of his disability.[2]

In order to recover compensatory damages under Title II, Plaintiff must show that the FDOC was deliberately indifferent to Wolfe's rights secured by the ADA. See Meagley v. City of Little Rock, 639 F.3d 384, 389-90 (8th Cir. 2011); Duvall v. County of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir. 2001); Wilson v. Broward County, 2007 WL

---

[1] Congress amended the ADA with the ADA Amendments Act of 2008 ("ADAAA"). Because Plaintiff's allegations relate to events that occurred prior to enactment of the ADAAA, and the ADAAA does not apply retroactively, the Court must consider Plaintiff's claims under the ADA. See Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011).

[2] When a plaintiff asserts a cause of action against an employer-municipality under the ADA, the public entity is liable for the vicarious acts of any of its employees as specifically provided by the ADA. See Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996).

2900389, *9 (S.D.Fla. Sept. 28, 2007). Unlike some tests for intentional discrimination, the deliberate indifference standard "'does not require a showing of personal ill will or animosity toward the disabled person' but rather can be 'inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.'" Meagley, 639 F.3d at 389.

### 1. There is a genuine issue of material fact as to whether Wolfe's asthma was a disability within the meaning of the ADA

The ADA defines a "disability" as an impairment which substantially limits a major life activity. 42 U.S.C. §12102(2). Plaintiff alleges that Wolfe suffered from severe asthma, an impairment which allegedly substantially limited his ability to breathe. While not disputing that Wolfe's asthma is an impairment within the meaning of the ADA or that breathing is a major life activity,[3] Defendant contends that Plaintiff has failed to offer evidence that Wolfe's asthma substantially limited his ability to breathe.

Asthma generally does not constitute a substantial limitation on the major life activity of breathing. See King v. England, No. 3:05C V949 MRK, 2007 WL 1845627, *6 (D.Conn. June 22, 2007). Courts, however, have found asthma to be a substantial limitation "where the plaintiff has a long history of asthmatic attacks and endures numerous and severe restrictions on daily activities as a result of the condition." Id. (collecting cases); see also Brown v. Georgia Dept. of Corrections, No. 5:07-cv-79 (CAR), 2008 WL 795086 * 3 (M.D.Ga. March 4, 2008)("[c]ourts have recognized that serious asthma can render an individual as disabled pursuant to the ADA.")

---

[3] See 28 C.F.R. §35.104 (defining "impairment" as "[a]ny physiological disorder or condition . . . affecting one or more of the following body systems: . . . respiratory" and defining "major life activities" to include functions such as breathing).

Here, Plaintiff offers evidence that Wolfe suffered daily breathing difficulties and frequent asthma attacks and as a result always carried his rescue inhaler with him, and used it multiple times a day, although it was not always sufficient and at times Wolfe needed further medical attention at the clinic. Prison medical records show repeated trips to the medical department, resulting in breathing treatments, overnight stays in the infirmary, or hospitalization. Doc. 74-10, Record of Asthma Emergencies. In November 2004, Wolfe experienced a near-fatal asthma attack, where he passed out in his cell and had to be rushed to the Emergency Room, where he was revived. Doc. 74-29, Unsworn Declaration of Rose Harmon-Palaile; Record of Asthma Emergencies at 11. In September 2005, treatment notes show that nebulizer treatments in the infirmary were unsuccessful, and his face was ashen and lips were tinged blue. Record of Asthma Emergencies at 21. Wolfe subsequently died from an asthma attack on August 3, 2006. By the time medical assistance arrived, Wolfe was passed out, his fingernail beds were blue and he could not be revived. Doc. 74-34, Declaration of David Kitt; Doc. 74-36, Declaration of Kathy Presley Baker.

Plaintiff also offered evidence that Wolfe's daily activities were restricted as a result of his asthma: (1) Wolfe rarely played sports or exercised and if he did he usually had to stop due to breathing difficulties; (2) asthma affected his ability to participate in other activities including singing; and (3) Wolfe could not work on the lawn squad or kitchen duty because both jobs worsened his asthma symptoms. Doc. 74-5, Second Declaration of Alfredo Rivera; Doc. 74-6 Second Declaration of Ruben Berrios; Doc. 74-7, Second Unsworn Declaration of Enrique Cotto; Doc. 74-8, Second Declaration of Luis Rivera.

In response, Defendant points to evidence that: (1) both prior to his incarceration as well as during his incarceration, Wolfe participated in football, basketball and other activities that are known to enhance breathing patterns; (2) prior to his incarceration Wolfe worked various jobs, including air-conditioning repair, automotive care, car washing, and construction work, and assisted his mother with vacuuming, painting, doing the dishes, and fixing electronics; (3) despite his asthma, Wolfe was able to commit armed burglary of an occupied dwelling, grand theft, and grand theft of a motor vehicle; and (4) during his incarceration, Wolfe engaged in risk enhancing activities, such as smoking cigarettes and marijuana.

Although the evidence Defendant presents may counter certain evidence Plaintiff submits on whether Wolfe's asthma substantially limited his ability to breathe, Plaintiff has presented sufficient evidence to create a triable issue regarding whether Wolfe had a disability as defined under the ADA. See e.g., Albert v. Smith's Food & Drug Centers, Inc., 356 F.3d 1242, 1251 (10th Cir. 2004) (plaintiff raised a genuine issue of material fact as to whether asthma substantially limits her breathing by offering evidence concerning plaintiff's reactions to common substances, limitations on activities, multiple hospitalizations and frequent trips to the emergency room).

### 2. There is a genuine issue of material fact as to whether the FDOC discriminated against Wolfe

Both Counts II and III are based on Plaintiff's contention that the FDOC failed to provide Wolfe with reasonable accommodations for his asthma – i.e., the means to promptly communicate with prison officials if he was having a life-threatening asthma attack, such as a different housing assignment or an emergency call button. In Count II, Plaintiff alleges that the FDOC acted intentionally and/or with deliberate indifference

to Wolfe's need for a reasonable accommodation. In Count III, Plaintiff alleges that the FDOC acted intentionally and/or with deliberate indifference to Wolfe's need for a reasonable accommodation by failing to train its agents and employees with respect to Wolfe's asthma.

In response, the FDOC contends that, consistent with internal policies, its agents and employees provided reasonable accommodations for Wolfe's asthma. The FDOC focuses on the medical care it provided, including enrollment in respiratory clinics, regular inhalers and medications, and frequent consultations with FDOT physicians and nurses; none of which, however, addressed Wolfe's ability to promptly communicate his need for immediate medical attention. The FDOC also contends that its agents were not aware that Wolfe suffered from such a severe medical condition.

Under the ADA, a plaintiff may establish discrimination by showing that the public entity refused to provide a reasonable accommodation for a disabled person. See 42 U.S.C.A. §12131(2); Boyd v. Johnson, No. 10-cv-701-MJR, 2011 WL 1196320, *6 (S.D. Ill. March 29, 2011). In addition to showing that Wolfe is a qualified individual with a disability, Plaintiff must show that Wolfe requested an accommodation or the need for one was obvious and the public entity failed to provide a reasonable accommodation. See McCoy v. Texas Dept. of Criminal Justice, No. C-05-370, 2006 WL 2331055, *7-9 (S.D. Tex. Aug. 9, 2006). The reasonableness of an accommodation is generally a question of fact not appropriate for resolution on summary judgment. Id. at *9 (collecting cases).

Plaintiff offered evidence that Wolfe had a long history of asthma and was treated for numerous asthma emergencies while incarcerated, including the serious life-

threatening asthma attack in November 2004 and the fatal asthma attack in August 2006. See e.g., Doc. 74-10, Record of Asthma Emergencies. Plaintiff offered evidence that in E-Dorm, where Wolfe was housed, all the inmates are housed in cells; correctional officers could not continuously observe inmates; there was no approved method for an inmate to alert correctional staff of an emergency; and in order to get the attention of the officers, inmates yelled and kicked or banged on their cell doors. See Doc. 74-22, Expert Report of Ron McAndrew at ¶14; Doc. 74-23, Deposition of R. Taylor at 31:6-16. Plaintiff further offered evidence that when Wolfe suffered his serious asthma attack in November 2004 and his fatal asthma attack in August 2006, the inmates yelled and kicked and banged on the cell door in efforts to get help, but that the correctional officers failed to immediately respond. See e.g., Doc. 74-25, Declaration of Gillard Smith; Doc. 74-28, Declaration of Jason Cunningham; Doc. 74-31, Declaration of Tommy Thompson; Doc. 74-32, Declaration of Luis Rivera; Doc. 74-34, Declaration of David Kitt; Doc. 74-35, Declaration of Ruben Berrios.

Plaintiff also offered evidence that following the November 2004 incident, Plaintiff and Wolfe both requested different housing where Wolfe would have had better access to emergency medical services in the event of an emergency. Doc. 74-30, Plaintiff's Response to Interrogatories at 12. Plaintiff offered evidence that despite these requests, FDOC never altered Wolfe's housing or made any other accommodation. Doc. 74-47, Deposition of Paul Rhoden at 25:14-26:8; Doc. 74-41, Deposition of Martie Taylor at 45:7-15. Doc. 74-24, Deposition of Dr. Erdem Aydur at 123:10-23, 124:19-25, 125:15-22.

Plaintiff has identified numerous policies, both FDOC-wide and at Lake C.I., showing *inter alia*, that the FDOC had no written procedures on how to accommodate inmates with severe asthma; the only accommodations made for asthmatic inmates at Lake C.I. were that they were permitted to carry rescues inhalers, they were permitted to request to be transported to medical for medical treatment, and they were permitted to stay in the infirmary for some period of time to treat their condition; disability was not considered when making housing determinations; and the FDOC did not provide ADA training on how to accommodate asthmatic inmates.  Doc. 74 at 25-26 (listing the various policies).

Plaintiff has offered expert evidence from Ron McAndrew, the former warden of several Florida prisons, that Wolfe (and other inmates like Wolfe) should have been provided with a housing accommodation that would have allowed FDOC personnel to be informed immediately of an asthma attack including: (1) installing an emergency call button in his cell; (2) giving Wolfe a portable emergency call button; (3) housing Wolfe in an area that would allow officers to continuously observe him, such as an infirmary or mental health unit; (4) housing Wolfe at one of FDOC's medical facilities; and (5) housing Wolfe in a location that had a defibrillator and oxygen at hand.  Doc. 74-22, Expert Report of Ron McAndrew at ¶18.  Plaintiff also offered expert evidence from Jay L. Falk, M.D., who opined that by housing Wolfe in E-Dorm, the FDOC denied Wolfe the most basic access to emergency care. Doc. 74-42, Revised Expert Report and Unsworn Declaration of Jay L. Falk at ¶21.

Viewing this evidence in the light most favorable to the Plaintiff, a jury could find that the FDOC and its agents had sufficient knowledge of Wolfe's asthma, and the

dangers posed by housing him in E-dorm, and that the FDOC and its agents were deliberately indifferent to Plaintiff's need for a reasonable accommodation, both through their actions and their policies. See e.g., McCoy v. Texas Dept. of Criminal Justice, 2006 WL 2331055 (S.D.Tex. August 9, 2006)(finding a genuine issue of fact on whether prison was deliberately indifferent to asthmatic inmate's need for an accommodation by housing him in administrative confinement and by not transporting him out of his cell immediately when he was having an asthma attack, which resulted in his death); Boyd v. Johnson, 2011 WL 1196320, *6 (S.D. Ill., March 29, 2011)(refusing to provide prisoner with means to communicate his need for immediate medical care in the event of a seizure – i.e. working call button or a sign to alert guards – may amount to deliberate indifference to Plaintiff's disability-related medical needs; and thus, was sufficient to state claim for damages under the ADA); see also U.S. v. Georgia, 546 U.S. 151, 158, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006)("it is quite plausible that the alleged deliberate refusal of prison officials to accommodate [Plaintiff]'s disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted 'exclu[sion] from participation in or . . . deni[al of] the benefits of' the prison's 'services, programs, or activities.'")

### 3. Sovereign Immunity

The FDOC argues that Plaintiff's claims for damages in both Count II and III are barred by Eleventh Amendment immunity. The Supreme Court, however, has held that Title II of the ADA validly abrogates sovereign immunity for conduct that actually

violates the constitution. U.S. v. Georgia, 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006); Boyd v. Johnson, 2011 WL 1196320, *6 (S.D. Ill. March 29, 2011).[4]

Here, Plaintiff contends that the FDOC's alleged deliberate indifference to Wolfe's need for a reasonable accommodation violated both Title II of the ADA and the Eighth Amendment. For the same reasons discussed above, Plaintiff has presented sufficient evidence to create a triable issue regarding whether the FDOC was deliberately indifferent to Wolfe's need for a reasonable accommodation in violation of the Eighth Amendment.

**IV. CONCLUSION**

Accordingly, for these reasons, Defendant's Motion for Summary Judgment as to Counts II and III of Plaintiff's First Amended Complaint (Doc. 52) is **DENIED**.

**DONE** and **ORDERED** in Ocala, Florida on September 14, 2012.

PHILIP R. LAMMENS
United States Magistrate Judge

---

[4] Plaintiffs also argue that the FDOC has waived Eleventh Amendment immunity. Plaintiffs contend that in the context of accommodation claims, when a state agency receives federal funds it expressly waives Eleventh Amendment immunity for purposes of both the Rehabilitation Act and Title II of the ADA. See e.g., Bennett-Nelson v. Louisiana Bd of Regents, 431 F.3d 448, 455 (5th Cir. 2005); O'Neil v. Texas Dept. of Criminal Justice, 804 F.Supp.2d 532, 539 (N.D. Tex. 2011). Without expressing any opinion on the merits of this argument, it is worth noting that Plaintiffs cite no case in which a court found waiver without the plaintiff alleging claims under both the Rehabilitation Act and Title II of the ADA. Alternatively, Plaintiffs contend that Plaintiff's claims could be construed as claims under the Rehabilitation Act.

Copies furnished to:

Counsel of Record
Unrepresented Parties